## Teague v. Commonwealth.

(Decided December 12, 1916.)

### Appeal from Hopkins Circuit Court.

1. Criminal Law—False Swearing—Acquittal Not Bar to Prosecution for.—Where the defendant in a prosecution against him for a violation of law testifies in his own behalf, and there is a judgment of acquittal, his acquittal will not bar a prosecution against him under an indictment for giving false testimony in the case in which he was acquitted.

2. Criminal Law—Argument—Time Allowed for.—The time that should be allowed for argument is a matter in the discretion of the trial judge, and unless it affirmatively appears that this discretion has been abused to the prejudice of the accused, the failure to allow the time requested will not be reversible error.

3. Criminal Law—Punishment Under Law When Offense Committed.—The law in force when the offence is committed and not the law in force when trial is had controls punishment.

4. Overruled Cases.—Cooper v. Commonwealth, 106 Ky., 909, and Petit v. Commonwealth, 22 Ky. L. R. 262, holding that where the defendant in a prosecution is acquitted, he cannot thereafter be

prosecuted for giving false evidence in the case in which he was acquitted, are overruled.

GORDON, GORDON & MOORE for appellant.

M. M. LOGAN, Attorney General, and D. O. MYATT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Lincoln Teague, the appellant, was tried in the police court of Madisonville on the charge of selling beer in violation of the local option law, about eight o'clock at night on October 16th and found not guilty. On the trial of this prosecution, after being first duly sworn as a witness, Teague, testifying in his own behalf, said that he was not in Madisonville between the hours of four o'clock in the afternoon and eleven-thirty o'clock on the night of that day, and that he did not sell at his place of business in Madisonville the beer he was being prosecuted for selling.

Thereafter the grand jury of Hopkins county returned an indictment against Teague, setting out in proper manner and form that on his trial he did "wilfully, knowingly, corruptly and feloniously swear, depose and give in evidence that on the day in question, viz., the 16th day of October, 1915, he, Teague, left the city of Madisonville, Hopkins county, Kentucky, about four o'clock p. m., and went to the city of Earlington, Hopkins county, Kentucky, and did not return to said city of Madisonville, Hopkins . county, Kentucky, until about eleven-thirty o'clock p. m., when he came from said city of Earlington to said city of Madisonville on the passenger train No. 54, which arrives in said city of Madisonville about eleven-thirty o'clock p. m., which said statement was wilfully, knowingly, corruptly and feloniously false and untrue, and the said Teague well knew it was false and untrue when he wilfully, corruptly, knowingly, feloniously and falsely swore to it, for, in truth and in fact, said Teague did not leave the city of Madisonville, Hopkins county, Kentucky, about four o'clock p. m. and go to the city of Earlington, Hopkins county, Kentucky, and remain there and not return to the city of Madisonville until eleven-thirty o'clock p. m. and then did not come from said city of Earlington to the said city of Madisonville on the passenger train No. 54,

which arrives in said city of Madisonville about eleven-thirty p. m., and the said Teague well knew said statements so sworn to by him as aforesaid were false and untrue.'' But it did not charge and could not truthfully have charged that Teague was convicted.

A general demurrer to the indictment was overruled, and thereafter on May 3, 1916, Teague was put upon his trial and found guilty. The jury assessed his punishment at confinement for two years in the penitentiary, and from the judgment on this verdict this appeal is prosecuted.

On the trial under the indictment the evidence for the Commonwealth was to the effect that at the trial of Teague in the police court he testified, after being sworn as a witness, that he was not in Madisonville between the hours of four o'clock in the afternoon and eleven-thirty on the night of October 16th, and that he did not, about eight o'clock on the night of that day, sell the beer he was being prosecuted for selling, and further testified that on the afternoon of that day he left Madisonville about four o'clock and went to the city of Earlington and did not return to Madisonville until eleven-thirty o'clock that night. There was also evidence sufficient to sustain the verdict of the jury that this testimony of Teague was false and that, in fact, he was in Madisonville at his place of business about eight o'clock on that night and did sell beer in violation of the local option law.

On this appeal it is insisted that the demurrer to the indictment should have been sustained, or, if not, that the motion made by counsel for Teague for a peremptory instruction should have been sustained. It is further urged that the court committed prejudicial error in limiting the time for argument allowed his counsel and in instructing the jury.

The argument in support of the proposition that the indictment was fatally defective is rested on the ground that, it was indispensable to a good indictment that it should charge that Teague was convicted on the prosecution in the police court; and the argument in support of the contention that the jury should have been instructed to return a verdict of not guilty is based on the proposition that a conviction could not be sustained, as the uncontradicted evidence showed that Teague was acquitted on his trial in the police court.

These two points relied on for reversal involve the same question and will be treated together. If it is necessary to sustain a prosecution for false swearing that the defendant should have been convicted at the trial during which the alleged false evidence was given, the indictment was fatally defective, and so if it was indispensable to a conviction that the evidence should show that the accused was convicted, the motion for a directed verdict in his behalf should have been sustained. On the other hand, if a person may be indicted and convicted of the offense of giving false testimony in a prosecution against him, although he may have been acquitted by the jury of the offense charged, the indictment was good and the evidence sufficient to sustain the conviction.

In Cooper v. Com., 106 Ky. 909, it appears from the opinion that Cooper was indicted in the Rowan circuit court for the offense of adultery committed with one Libbie Purvis, and on the trial under that indictment he was acquitted. That thereafter the grand jury of Rowan county returned an indictment against Cooper charging that upon his trial for adultery he testified that he had not had carnal, sexual intercourse with Libbie Purvis, which testimony was, as he knew, false, and under this indictment he was convicted. In holding that the conviction for giving false testimony could not be sustained because Cooper had been acquitted of the offense with which he was charged on the trial in which the alleged false testimony was given, the court said, in the course of the opinion: "Appellant in this case had already been tried and acquitted of the offense of having had carnal, sexual intercourse with Libbie Purvis, and the judgment in that case is *res judicata* against the Commonwealth, and he cannot again be put on trial where the truth or falsity of the charge in that indictment is the gist of the question under investigation. It therefore follows that appellant was entitled to a peremptory instruction to the jury to find him not guilty."

Again, in Petit v. Com., 22 Ky. L. R. 262, it appears that Petit, on the trial of a prosecution against him for the offense of carrying concealed on or about his person a deadly weapon, testified in his own behalf that he did not have the pistol at the time and place charged in the indictment, and was acquitted by the verdict of the jury.

Thereafter he was indicted for giving false evidence in the case in which he was acquitted, and on this indictment he was found guilty. In holding that the indictment for false swearing could not be maintained, the court said: "The question here presented is identical with the case of Cooper v. Com., 106 Ky. 909, and it is admitted by the Attorney-General that unless the Cooper case be overruled, a reversal should be had. To that opinion we adhere."

It will thus be seen that if the ruling in the Cooper case and the Petit case is adhered to, the indictment against Teague was not good and the motion for a directed verdict in his behalf should have been sustained, and accordingly the judgment appealed from should be reversed on these grounds.

On this appeal we have carefully examined the reasoning upon which the decision in the Cooper case was rested and have reached the conclusion that that case, as well as the Petit case which merely followed it, should be overruled. An investigation of this question discloses that, with the exception of the Cooper and Petit cases and the case of United States v. Butler, 38 Fed. 498, in which a like ruling was made, the authorities are uniform that the acquittal in a prosecution against a defendant will not bar a subsequent prosecution against him for giving false testimony in the case in which he was acquitted.

The Circuit Court of Appeals of the United States for the Fourth Circuit had before it in Allen v. United States, 194 Fed. 664, 39 L. R. A. (N. S.) 385, this identical question, and that court, after a review of the authorities, refused to follow the federal case of United States v. Butler or the two cases from this court, and held that although the defendant had been acquitted at the trial at which the alleged false testimony was given, this did not bar a prosecution for giving false evidence on that trial. To the same effect are State v. Vandemark, 77 Conn. 201, 1 Ann. Cas. 161; Hutcherson v. State, 33 Texas Crim. Rep. 67, 24 S. W. 908; State v. Bevill, 79 Kan. 524, 131 Am. St. Rep. 345, 17 Ann. Cas. 753; State v. Cary, 159 Ind. 504; State v. Caywood, 96 Ia. 372; People v. Albers, 137 Mich. 679; State v. Smith, 119 Minn. 107, and State v. Sargood, 80 Vt. 415, 13 Ann. Cas. 367.

But aside from the great weight of authority opposed to the ruling in the Cooper, Petit and Butler cases, it

seems to us that the reasoning on which these cases were rested is unsound, as well as unsafe. The efficient, as well as the correct administration of the criminal law, demands that the defendant in a prosecution for false swearing or perjury should not be allowed to plead in bar of the prosecution the judgment of acquittal in the case in which the alleged false testimony was given. It will be observed that the decision in the Cooper case, as well as the Butler case, was put upon the ground that the judgment of acquittal in the prosecution was an adjudication that the defendant was not guilty of the offense charged, and hence it followed that he could not in a subsequent prosecution be punished for giving the evidence upon which his acquittal was secured. In other words, the judgment of acquittal was held to be *res judicata*. If this were so, it would seem to logically follow that a judgment of conviction in the prosecution in which the alleged false evidence was given would likewise be conclusive evidence of the guilt of the accused in a prosecution for false swearing in testifying that he was not guilty of the offense for which he was found guilty. But in neither the Cooper nor the Butler cases was the court willing to carry the principle announced to its logical conclusion and give a judgment of conviction the same effect as a judgment of acquittal would have. And this itself sufficiently demonstrates the unsoundness of the view taken in these cases.

The effect of the ruling in the Cooper and Butler cases is that the defendant in a prosecution against him may practice a fraud upon the court and the jury and secure his acquittal by means of this fraud perpetrated by and through the medium of his false evidence, and yet this fraud will be sanctioned to such an extent as to make the judgment of acquittal conclusive evidence of his innocence in swearing that he was not guilty of the offense charged, although in truth and in fact he might have been proven guilty beyond a reasonable doubt and convicted if all the facts in the case had been truthfully put before the court and jury.

The rule announced in the Cooper and Butler cases would, in effect, make a judgment of acquittal in a criminal case obtained by fraud conclusive and beyond the power of the court to re-investigate. But the rule everywhere prevails that a judgment obtained by fraud is not conclusive, and the means by which it was secured may

be re-investigated and a different result reached even in a collateral attack on the fraudulent judgment when the wrong cannot be corrected by appeal; and in a criminal case a judgment of acquittal, although obtained by fraud, cannot be re-opened on an appeal. When the defendant is put upon his trial and acquitted, that is an end of the matter. And so if the defendant in a prosecution against him could by giving false testimony secure a judgment of acquittal when if the truth had been known there would have been a judgment of conviction, it would necessarily follow that the defendant could commit two crimes against the Commonwealth, one the offense with which he was charged in the prosecution in which he gave false evidence, and the other the crime of false swearing, and go free of punishment for each.

It needs no citation of authority or elaborate argument to show that no rule of court-made law or practice that would permit conditions like this to prevail should be tolerated in a jurisdiction where punishment is supposed to follow the wilful violation of a statute. But we are not without authority on this subject, because a like question was presented in Carrington v. Com., 78 Ky. 83. In that case, as appears from the opinion, Carrington, under what are now sections 1073 and 1076 of the Kentucky Statutes, under an indictment found against him in the circuit court, was tried in the county court, and when it was afterwards sought to try him in the circuit court, he attempted to plead in bar the judgment of the county court. But the circuit court rejected this plea upon the ground that the proceedings in the county court were fraudulent, and in sustaining the circuit court this court said: "The circuit court properly refused to permit its jurisdiction to be ousted, and to allow the prisoner, by a device so transparent, to choose the tribunal in which he would be tried. A judgment of acquittal thus procured was not a bar, and was properly disregarded.

"It is to be treated as if the prisoner had procured himself to be accused, arrested, and tried, and then attempted to plead the judgment thus obtained in bar; for although he had been regularly indicted, he procured a trial in the county court by a fraud upon the statute giving that court jurisdiction." To the same effect are Reddy v. Com., 97 Ky. 784, and McDermott v. Com., 30 Ky. L. R. 1227."

In Freeman on Judgments, sec. 318, it is also said: "The principles applicable to judgments in criminal cases are, in general, identical, so far as the question of estoppel is involved, with the principles recognized in civil cases. An acquittal or a conviction, under an indictment for any offense, is a bar to any subsequent indictment substantially like the former. But in criminal, as in civil actions, it is essential that the judgment be on the merits, and not tainted with fraud. Thus going into a favorable court, and submitting to a conviction, in order to escape a severe penalty, is no bar to a bona, fide prosecution."

It is fundamental in the policy of the law that judicial proceedings and judgment shall be fair and free from fraud, and litigants and persons be encouraged when sworn as witnesses to tell the truth, and punished if they do not. If, however, a party accused of crime could secure immunity from prosecution for false swearing or perjury by securing his acquittal through these means, the law would be offering a reward for false swearing by affording the person guilty of it protection instead of inflicting punishment. Many persons accused of committing offenses against the law, and especially persons of low character who are most commonly the offenders, would feel entirely free to give false evidence in their own behalf and take the chance of thereby securing an acquittal if they knew that an acquittal would bar a prosecution against them for giving the false evidence, and that if they were convicted the conviction would not be conclusive evidence that they were guilty of false swearing. The reason and the common sense of the thing are opposed to a rule that would make it possible for a guilty party to escape punishment when he had secured his acquittal of the offense charged by false testimony.

It may be suggested that if a person who told the truth in a prosecution against him was acquitted, a sufficient number of his enemies might be able to procure his indictment and conviction by giving evidence that his testimony was, in fact, false, and therefore the innocent defendant might be convicted of false swearing. It is, of course, possible that a situation like this might arise, but it is not probable and the possibility of wrong is too remote to have any controlling influence on the principle at stake.

It further appears that on the trial of this case the lower court limited the argument of counsel for the defendant to thirty minutes, and it is pressed on our attention that although the judgment of conviction may be reversed for other reasons we should for the guidance of the trial judge on another trial, if there be one, indicate that a longer time should be allowed for the argument of the case than was permitted on this trial.

It is at once apparent that the time that should be allowed for the argument of cases cannot be regulated by a rule fixing the time that should be allowed in any particular case, because every case presents different facts and circumstances. And so, although we have in some cases held that the time allowed for argument was not sufficient and in other cases held that it was, we have adopted the practice of leaving it to the trial judge to regulate in the exercise of a sound discretion the time for argument in each case, and it is only when it plainly appears that this discretion has been abused to the prejudice of the substantial rights of the defendant that his refusal to allow a longer time will be deemed reversible error. Thus it was said in Combs v. Com., 97 Ky. 24:

"What length of time the ends of justice and rights of an accused party require should be allowed for argument to the jury on a criminal trial must from necessity be generally left to the sound discretion of the trial court; otherwise, an undue portion of the time of a court might be needlessly consumed in the trial of one cause, to the detriment of other business and rights of other parties."

In somewhat different form in Stout v. Com. 148 Ky. 199, the same idea was expressed as follows: "We have ruled in a number of cases that the time that shall be allowed for argument is a matter in the discretion of the trial judge, and that unless it affirmatively appears that this discretion has been abused to the prejudice of the accused, it will not amount to reversible error; Combs v. Com., 97 Ky. 24; Harris v. Com., 25 Ky. L. R. 297; Scott v. Com., 148 Ky. 80. The trial court should, of course, allow counsel for the accused in every case reasonable time and opportunity to present the reasons why there should be an acquittal, but it is obvious that the time that should be allowed depends upon the facts and circumstances of each particular case. It is not to be

altogether regulated by the number of witnesses that are introduced, as a very complicated state of facts might be presented by the testimony of a single witness. It is rather to be controlled by the simplicity of the facts and circumstances surrounding the transaction.''

We may, however, say that, taking into consideration the gravity of the offense, the number of witnesses who testified in the case in behalf of the Commonwealth and the defendant, one hour would not be more than reasonable time to allow for the argument of the case.

The crime charged in the indictment was committed in October, 1915, at a time when what is known as the Indeterminate Sentence Law, found in section 1136 of the Kentucky Statutes, was in effect. Under that statute the jury had the right, if they found the defendant guilty, to fix an indeterminate sentence not less than the minimum time nor greater than the maximum time of imprisonment prescribed by law for the punishment of the offender, so that under the statute which prescribes that the punishment for false swearing shall be confinement for not less than one nor more than five years, the jury might have returned a verdict finding the defendant guilty and fixing his punishment at not less than one nor more than five years' confinement in the State Penitentiary. Before the trial was had, however, the Indeterminate Sentence Law was repealed by an act of 1916 that may be found in the Acts of 1916, page 430, and the trial court being of the opinion that the provisions of the 1916 act should control, instructed the jury that if they believed the defendant was guilty, they should fix his punishment at confinement in the penitentiary for not less than one nor more than five years; and the jury found the defendant guilty and fixed his punishment at confinement in the penitentiary for two years.

It was held in Albritten v. Com., 172 Ky. 274, a case presenting this precise question, that a defendant must be punished under the law in force at the time the offense was committed and not under the law in force at the time of the trial. This general statement, however, is to be considered as controlled by section 465 of the Kentucky Statutes. Therefore the court in this case should have instructed the jury under the Indeterminate Sentence Law.

For the error in the instructions, the judgment must be reversed, and it is so ordered.