## Howell v. Commonwealth

October 13, 1950.

James W. Turner, Judge.

C. F. See, Jr., for appellant.

A. E. Funk, Attorney General, Zeb A. Stewart, Assistant Attorney General, for appellee.

STANLEY, COMMISSIONER—Affirming.

On a Saturday afternoon in June, 1949, on a main street of Louisa, the appellant, George N. Howell, stopped Bert McCormick, Jr., and his Brother, Damer; asked Bert, "What did you hit me with there that night?"; cursed him and said, "I am going to kill both you sons-of-bitches right here;" drew a pistol and shot Bert with a pistol in the back three times as he was running away. That is the evidence for the Commonwealth. The two men had had a fight at a country church a few nights before and McCormick had struck Howell a severe blow with some instrument. The evidence of the defense is that McCormick stopped Howell on the street, cursed him and "run his hand in his bosom and said, 'Don't start anything here today.'" Thinking he was going to shoot, Howell shot McCormick, firing four times. The first shot was fired while McCormick was facing him.

The jury accepted the Commonwealth's version, convicted Howell of shooting and wounding McCormick with the intent to kill him, and placed his punishment at five years in the penitentiary.

During his examination, his attorney asked the defendant to remove his coat and shirt and show the jury how he was crippled. The court ascertaining that no injury was caused in this affray, sustained the objection.

The defendant avowed that "because of a severe burn, he was not able to use his arm at the time of this difficulty or the difficulty at Trinity Church." The court permitted the defendant to testify that he had been discharged from the army because he was crippled and disabled and that he could not raise his right arm. Ordinarily it is proper to show the relative physical strength and condition of the parties that the jury might draw an inference as to who was the aggressor and as it might affect the question of apparent danger of the defendant in a plea of self-defense. Broughton v. Commonwealth, 309 Ky. 127, 216 S. W. 2d 935. We think, under the circumstances, the evidence admitted was sufficient. It is not claimed there was any physical action other than the drawing of a pistol by the defendant and his statement of a belief that his adversary was "about to beat him to the draw." The defendant's apparent purpose was to show that he did not have strength and ability to shoot McCormick. Whether it was with his crippled right arm or his sound left arm was immaterial. He did shoot him. The ruling of the court was proper.

In order to avoid a continuance of the trial because of the absence of Cecil Hammond, the defendant's brother-in-law, his testimony given on a previous trial under this indictment was read to the jury as his deposition. He therein testified that he had gone to Louisa with George Howell and his brother, followed them down the street to the place of the shooting and was within six feet of the men at that time. On this trial, in rebuttal, the Commonwealth introduced Ernest Cotton to show that Hammond was not at that place. However, instead of asking the witness where Hammond was, the Commonwealth's Attorney merely asked, "Did he say anything to you?" An objection was overruled, and the witness answered that he said, "What is going on down there?" The witness had said, "Go, down and see." The next question was, "Where did he have that conversation with you?" The witness answered, "In the courthouse square here." The appellant vigorously argues that the admission of this rebuttal testimony violates the rule of impeachment of a witness laid down in Sec. 598 of the Civil Code of Practice, which requires that before evidence of a contradictory statement can be introduced, the witness must be asked concerning it. We held in

Calmes v. Commonwealth, 304 Ky. 71, 199 S. W. 2d 993, that where the deposition of an absent witness is read in evidence, proof of contradictory statements is not competent where there had not been any inquiry of him concerning the point. What these witnesses may have said, one to the other, was wholly immaterial and the objection to the testimony should have been sustained. But the only material point was whether Hammond was where he testified he was, and the purpose and effect of Cotton's testimony was to show that Hammond was not there but in the courthouse yard, some distance away. That was competent and the variation or indirect way of showing it cannot be regarded as harmful to the defendant.

Two witnesses testified the defendant's reputation for peace and quiet and moral character was good. Pursuing the usual line of cross-examination as to whom the witness had heard say that the reputation was good, the witnesses made it clear that not having heard the man's reputation discussed indicated to their minds that it was good. To clinch the matter, the Commonwealth's Attorney asked one witness, "You never heard anyone say anything before this trouble happened that his reputation was good?" and he answered, "I don't know that I did." The attorney then moved to exclude the testimony. In overruling the motion, the court merely said, "The jury can take it for what it is worth." Almost the identical interrogation and statement of the court were made concerning the testimony of the other character witness. The defendant insists that these statements of the court constitute prejudicial error.

Where character evidence relates to the nature of the offense charged or refers to the trait involved, it is substantive in character and likewise presumptive. It strengthens the presumption of innocence and permits the jury to infer that it is improbable that the accused would have conducted himself or have committed the act as charged; also to consider it in mitigation. Shell v. Commonwealth, 245 Ky. 223, 53 S. W. 2d 524; Davenport v. Commonwealth, 285 Ky. 628, 148 S. W. 2d 1054. Proof of good character is merely a circumstance to be weighed and considered in connection with other evidence, and its value varies, depending in part upon the degree of knowledge of the witness testifying. In short, the evidence is always admitted "for what it is worth."

While we are among the jurisdictions that hedge the judge about with strict limitations on remarks and observations respecting evidence, still there must always be something in any such statement of the court which a court of review, made up of reasonable and experienced minds, can say was prejudicial to the substantial rights of the defendant. The remarks made by the trial judge in ruling on the admissibility and effect of evidence are not erroneous, provided they are not unfair and prejudicial to the rights of the accused. Carnes v. Commonwealth, 146 Ky. 425, 142 S.W. 723. We do not regard the statement under attack here as disparaging the evidence or as likely to have influenced the jury in any degree.

The evidence did not authorize an instruction on defense of the brother of the accused. There is no indication of this in the entire record save and except the mere statement of the defendant in answer to leading questions of his attorney that he fired because he believed his brother and himself were in danger of great bodily harm. The brother did not claim it. All the circumstances described by the defendant, his brother and other witnesses destroy this mere response of the defendant.

The court properly defined "malicious" in accordance with the form many times approved. It was proper not to have followed the form given in Sec. 810, Stanley's Instructions to Juries in this case. Moore v. Commonwealth, 313 Ky. 505, 232 S.W.2d 1021.

Vigorous criticism is made of the refusal of the judge to probate the sentence of the defendant. It is well settled that this is a matter altogether within the discretion of the trial court. Certainly we will not interfere where the record upon which the court acted is not before us.

The defendant had a fair trial, and the judgment is affirmed.